JERRY E. SMITH, Circuit Judge:
In August 2002, Shirley Douglas opened a checking account with Union Planters Bank and signed a signature card binding her to arbitration. The arbitration provision included a clause (the “delegation provision”) delegating the question of a dispute’s arbitrability to an arbitrator. Douglas’s account was closed less than a year later. Union Planters Bank (“Union Planters”) merged with Regions Bank (“Regions”) in June 2005.
In 2007, Douglas was injured in an automobile accident caused by the negligence of the driver of another vehicle. She retained a lawyer, settled the claim for $500,000, and hired a separate attorney, Vann Leonard, to get the settlement approved in bankruptcy court, where she had filed under Chapter 13. Leonard allegedly embezzled Douglas’s portion of the settlement. Douglas sued Regions and Trust-mark National Bank (“Trustmark”), where Leonard had maintained accounts, for negligence and conversion on the ground that they had notice of the embezzlement and negligently failed to report that activity, make reasonable inquiries, or prevent further diversions.
Regions moved to compel arbitration based on the delegation provision in the arbitration agreement Douglas had entered into with Union Planters, Regions’ predecessor-in-interest. The district court denied the motion, and Regions appealed.[1] Although the district court applied the incorrect law, we affirm because the claim that this dispute is within the scope of the arbitration provision is groundless.
I.
The district court denied Regions’ motion to compel arbitration on the ground that no arbitration agreement existed between Douglas and Regions because under Mississippi law, Union Planters’ successor-in-interest (Regions) was not a party to the arbitration agreement. Significantly, Douglas does not defend the district court’s reasoning on appeal. She admits that Regions was a party to the original *462 arbitration agreement under Mississippi law, and indeed it appears that she never argued in response to the motion to compel that Regions’ status as a successor did not bind it to the agreement. The district court apparently did not consider the applicable state law.[2]
An agreement did, in other words, exist. Douglas signed a signature card with an arbitration agreement when she opened a checking account some number of years before the subject chain of events. The question is whether the arbitration agreement and its delegation provision have anything to do with the claim at issue here — that is, whether there is an arbitration agreement relevant to the dispute at hand.
A delegation provision is an “agree[ment] to arbitrate ‘gateway’ questions of ‘arbitrability,’ such as ... whether [the parties’] agreement covers a particular controversy.” Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 130 S.Ct. 2772, 2777, 177 L.Ed.2d 403 (2010). Parties may agree to arbitrate whether a particular claim is subject to arbitration so long as they clearly and unmistakably do so in their agreement. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Delegation provisions thus normally require an arbitrator to decide in the first instance whether a dispute falls within the scope of the arbitration provision. There is doubt that Douglas unmistakably intended to arbitrate gateway questions of arbitrability.[3]
The mere existence of a delegation provision in the checking account’s arbitration agreement, however, cannot possibly bind Douglas to arbitrate gateway questions of arbitrability in all future disputes with the other party, no matter their origin. Suppose the driver who injured Douglas was an employee of Regions who was conducting bank business. Douglas would not have to arbitrate the underlying tort, which is unrelated to her checking account and its accompanying contract, just because she happens to have a contract with Regions on a completely different matter. It follows that she does not have to send such a claim for “gateway arbitration” merely because there is a delegation provision in the completely unrelated contract.
*463 If it were otherwise, then every case involving an arbitration agreement with a delegation provision must, with no exceptions, be submitted for such gateway arbitration; no matter how untenable the argument that there is some connection between the dispute and the agreement, an arbitrator must decide first. Douglas would have to go to the arbitrator, who would flatly tell her that this claim is not within the scope of the completely unrelated arbitration agreement she signed many years earlier when opening a checking account and that she must actually go to federal court after all.
The law of this circuit does not require all claims to be sent to gateway arbitration merely because there is a delegation provision. In Agere Systems, Inc. v. Samsung Electronics Co., 560 F.3d 337 (5th Cir. 2009), we sent a dispute to arbitration so the arbitrator could decide the gateway question of arbitrability because the agreement had a delegation provision. But we did so only because there were plausible arguments that the dispute was covered by the agreement as well as plausible arguments that it was not: “We adopt no new standards of Fifth Circuit analysis of arbitration provisions today.” Id. “We simply conclude that there is a legitimate argument that this arbitration clause covers the present dispute, and, on the other hand, that it does not. The resolution of these plausible arguments is left for the arbitrator.” Id.
The Agere court cited the test established by another circuit to decide whether a particular dispute must go to gateway arbitration because of the presence of a delegation provision:
The Federal Circuit recently articulated an approach for handling such disputes, an approach the parties have addressed in this appeal. That court set out a two step process: (1) did the parties “unmistakably intend to delegate the power to decide arbitrability to an arbitrator,” and if so, (2) is the assertion of arbitra-bility “wholly groundless.”
Id. (citing Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1371 (Fed.Cir.2006)). The Federal Circuit elaborated on this test in a more recent opinion:
In Qualcomm, we explained that the “wholly groundless” inquiry allows a court to stay an action based on an agreement among the parties to submit their disputes to arbitration, “while also preventing a party from asserting any claim at all, no matter how divorced from the parties’ agreement, to force an arbitration.” Accordingly, “even if the court finds that the parties’ intent was clear and unmistakable that they delegated arbitrability decisions to an arbitrator, the court may make a second more limited inquiry to determine whether a claim of arbitrability is ‘wholly groundless.’” Because the “wholly groundless” inquiry is supposed to be limited, a court performing the inquiry may simply “conclude that there is a legitimate argument that [the] arbitration clause covers the present dispute, and, on the other hand, that it does not” and, on that basis, leave “[t]he resolution of [those] plausible arguments ... for the arbitrator.” Nevertheless, the “wholly groundless” inquiry “necessarily requires the courts to examine and, to a limited extent, construe the underlying agreement.”[4]
*464 Although the Agere court did not explicitly adopt this two-part Qualcomm test, its holding implicitly relied on it.
The Qualcomm test is an attractive one and most accurately reflects the law — that what must be arbitrated is a matter of the parties’ intent. See Rent-A-Ctr., 561 U.S. at 80, 130 S.Ct. 2772. When Douglas signed the arbitration agreement containing a delegation provision, did she intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court? Obviously not.
If the argument that the claim at hand is within the scope of the arbitration agreement is “wholly groundless,” surely Douglas never intended that such arguments would see the light of day at an unnecessary and needlessly expensive gateway arbitration. We conclude that when she agreed to arbitrate “the validity, enforceability, or scope of this Arbitration provision,” Douglas did not intend to bind herself for life to gateway arbitration for any and all claims that ever might exist between her and Regions. She meant only to bind herself to arbitrate gateway questions of arbitrability if the argument that the dispute falls within the scope of the agreement is not wholly groundless.
Because the events leading to Douglas’s claim — a car accident, a settlement, and embezzlement of the funds through an account that a third party held with the bank — have nothing to do with her checking account opened years earlier for only a brief time, the notion that her claim falls within the scope of the arbitration agreement is “wholly groundless.” Regions’ only theory that its claim of arbitrability is not wholly groundless is that there is a delegation provision. That is circular: The two-part Qualcomm/Agere test demands that even if there is a delegation provision (step one), the court must ask whether the averment that the claim falls within the scope of the arbitration agreement is wholly groundless (step two). Merely restating that there is a delegation provision brings us back to step one.
Because this matter should not be sent to gateway arbitration, the judgment denying the motion to compel arbitration is AFFIRMED.

. The district court stayed proceedings with Trustmarlc pending conclusion of any arbitration proceedings between Douglas and Regions.

. “(a) When a merger becomes effective: ... (3) All property owned by, and every con tract right possessed by, each corporation or eligible entity that merges into the survivor is vested in the survivor without reversion or impairment.]" MISS. CODE ANN. § 79-4-11.07(a)(3); see also id. § 81-5-2 ("All the provisions of law relating to private corporations operating in this state which are not inconsistent with this chapter or Chapters 1 and 3 of Title 81, Mississippi Code of 1972, or with the proper business of depository institutions, shall be applicable to all state banks.”).

. The agreement states that
by using or maintaining your account, you agree that, in the event of any dispute, disagreement, claim or controversy ... between you and us or any of our agents or employees, or our parent, subsidiary or sister corporations or their employees or agents, any such dispute will, at the election of you or us, be resolved through the process of binding arbitration ... regardless of when the dispute arose.
It then defines "disputes” as follows (emphasis added):
"Disputes” shall have the broadest possible meaning and shall include ... any claim, controversy or dispute arising from or relating in any way to (i) this Agreement, (ii) any related agreement (iii) any agreement that this Agreement supercedes, [and] (iv) the relationships, accounts or balances on the accounts resulting from this Agreement or such other agreements, including the validity, enforceability, or scope of this Arbitration provision or any amendments or supplements to this Agreement [].... Disputes include! ] ... any Disputes based on ... tort ... (including any claims of any injury or damage to person or property), claims for breach of fiduciary duty or wrongful acts.

. InterDigital Commc’ns, LLC v. Int'l Trade Comm’n, 718 F.3d 1336, 1346-47 (Fed.Cir. 2013) (internal citations omitted) (brackets and ellipses in original), vacated on other grounds, - U.S. -, 134 S.Ct. 1876, 188 L.Ed.2d. 905 (2014) (vacating on mootness grounds).