# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41507

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2016

Lyle W. Cayce
Clerk

TED L. KUBALA, JR.,
  Individually and on Behalf of All Other Similarly Situated,

Plaintiff–Appellee,

versus

SUPREME PRODUCTION SERVICES, INCORPORATED,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Ted Kubala brought a proposed Fair Labor Standards Act ("FLSA") collective action against his employer, Supreme Production Services, Incorporated ("Supreme"). After the action was filed but, according to Supreme, before it had learned of the suit, the company announced a new policy requiring employees to arbitrate employment disputes, including FLSA claims. The

No. 15-41507

agreement indicated that an employee's continued employment was expressly conditioned on his acceptance of the terms of the agreement; it contained a "delegation clause" that assigned to the arbitrator the power to make gateway determinations as to the arbitrability of a specific claim.

Kubala continued employment and accepted payment for his work. The district court denied Supreme's motion to dismiss or compel arbitration. Because the arbitration agreement is binding and contains a delegation clause transferring the power to decide threshold questions of arbitrability to the arbitrator, we reverse and remand and direct the district court to enter an order compelling arbitration.

I.

Kubala and other employees were paid a base salary and an hourly bonus for time spent working in the oilfields. Kubala's suit, filed March 9, 2015, claimed that he and similarly situated workers were improperly denied overtime pay. The suit is a proposed collective action, but no certification decision was entered before Kubala appealed, so he is the only appellant.

On March 11, 2015—two days after the suit was filed but ostensibly before Supreme received notice—the company held a meeting at which it announced a new arbitration policy to govern all employment-related disputes, including in relevant part any claims under the FLSA. In addition to various substantive terms, the policy contained a "delegation clause" stating that any disputes as to the interpretation or applicability of the agreement are to be resolved in the first instance by the arbitrator. The policy and accompanying presentation indicated that an employee's assent to the arbitration agreement was a necessary condition of employment and that its effective date would be the earlier of the date on which the employee signed the policy or March 13, 2015. Kubala did not sign the agreement after the meeting. Supreme offered

2

No. 15-41507

evidence indicating that he relented the next day, but the district court never entered a factual finding that Kubala did or did not eventually sign the policy.

Relying on this arbitration agreement (and specifically referencing the delegation clause), Supreme moved for the district court either to dismiss Kubala's claims or to compel arbitration. Kubala opposed the motion, which the court denied. It reasoned that there was no arbitration agreement, because nothing in Supreme's arbitration policy indicated an intent to arbitrate pre-existing disputes. The court did not address Supreme's contention that the delegation clause transferred the power to decide threshold arbitrability issues to the arbitrator. Supreme appeals under 9 U.S.C. § 16(a)(1)(C).

II.

We review *de novo* a ruling on a motion to compel arbitration. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement. Ordinarily both steps are questions for the court. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). But where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

Ordinarily this type of dispute involves two layers of arguments—the merits (does Kubala have a right to back pay?) and arbitrability of the merits (must Kubala bring his claim for back pay in arbitration rather than in court?). *Id.* The presence of a delegation clause adds a third: *"Who should have the primary power to decide"* whether the claim is arbitrable. *Id.* Delegation

3

clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does. But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated. *Id.* If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases.[1]

Supreme contends that the agreement contains a valid and enforceable delegation clause. Thus, this appeal presents two issues: first, whether the parties entered into a valid agreement to arbitrate *some* set of claims; and second, whether that agreement actually does contain a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold

---

[1] We have carved out a narrow exception to the *Rent-A-Center* rule: Where the argument for arbitration is "wholly groundless," we refuse to enforce a delegation clause. *See Douglas v. Regions Bank*, 757 F.3d 460, 464 (5th Cir. 2014). Such cases are exceptional, and the rule in *Douglas* is not a license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause. So long as there is a "plausible" argument that the arbitration agreement requires the merits of the claim to be arbitrated, a delegation clause is effective to divest the court of its ordinary power to decide arbitrability. *Id.* at 463 (quoting *Agere Sys., Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009)). Thus, even where a party relies on *Douglas* to resist arbitration, the court should not *resolve* the parties' arbitrability arguments. Instead, it should look only to whether there is a *bona fide* dispute on arbitrability. If there is, the claim must be referred to arbitration for resolution of the arbitrability issue.

This exception is not relevant here, because Kubala has not briefed the *Douglas* exception and, in any event, could not persuasively posit that Supreme's arguments for arbitration are wholly groundless. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (stating that issues not briefed on appeal are waived).

No. 15-41507

arbitrability issues.

## III.

The district court erroneously held that there is no arbitration agreement. The court appears to have thought that the question at the first step of the analysis is whether there is an agreement to arbitrate *the claim currently before the court*. But as we have explained, the only issue at the first step is whether there is any agreement to arbitrate any set of claims. Determining whether that agreement covers the claim at bar is the second step. Thus, the district court erred by engaging in close contract interpretation at the first step, which focuses only on contract formation. The proper course is to examine only the formation issue, and it is obvious that these parties validly formed an agreement to arbitrate some set of claims.

Whether they entered a valid arbitration contract turns on state contract law. *Carey*, 669 F.3d at 205. They agree that Texas contract law governs. Arbitration agreements between employers and their employees are broadly enforceable in Texas. *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Kubala was not initially subject to an arbitration agreement; instead, it was imposed while he was already employed on an at-will basis. Therefore, the question is whether the arbitration agreement was a valid modification of the terms of his employment. To demonstrate a modification of the terms of at-will employment, the proponent of the modification must demonstrate that the other party (1) received notice of the change and (2) accepted the change. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). But acceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work. "[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has

5

accepted the changes as a matter of law." *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) (cited in *Halliburton,* 80 S.W.3d at 568).[2]

Texas law is no different when the modification in question is an arbitration requirement for employment-related disputes. The law allows an employer to impose an arbitration agreement as a term of continued employment so long as it provides notice of the policy; as in *Halliburton, see* 80 S.W.3d at 568–69, an at-will employee who continues working with notice of a new arbitration policy is deemed to have accepted the policy as a matter of law. *Halliburton* makes plain that this principle applies where the modification in question is the addition of an arbitration agreement to the existing employment agreement.

Supreme has satisfied this requirement. It provided notice in the form a meeting at which the policy was explained and employees (including Kubala) were informed that acceptance was a condition of continued employment. Kubala continued to come to work after the March 13 date of deemed acceptance. This is a nearly identical match for the facts in *Halliburton*, in which the court determined that the agreement was valid and binding. *See id.* at 573. We agree.

Kubala's only responses are unpersuasive. First, adopting the district court's mistaken approach, Kubala attempts to conflate the first two prongs of the contract-formation analysis. He therefore urges that the contract, properly interpreted, does not cover his claim, so there is no agreement to arbitrate. As explained above, these issues of contract interpretation do not factor into the first step, because they do not go to contract formation. Second, Kubala

---

[2] Therefore, it does not matter whether Kubala signed the agreement, which explicitly indicated that it would come into effect on a certain date if the employee continued to work.

## No. 15-41507

maintains that no contract was formed because he was not given sufficiently advanced notice that the arbitration agreement would come into effect. We will not consider that theory, because Kubala failed to present it to the district court. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc) (per curiam). In sum, there is a valid arbitration agreement.

## IV.

Because Supreme asserts that the agreement contains a valid delegation clause, our analysis is initially narrow. If we determine that the agreement does contain such a clause, the role of the federal courts is strictly limited—we must refer the claim to arbitration absent some exceptional circumstance. If the agreement does not contain a delegation clause, we must perform the ordinary arbitrability analysis.

Because there is a valid delegation clause, we do not reach the arbitrability dispute and instead remand with direction to the district court to refer it to arbitration. The delegation clause reads as follows:

> The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute.

That clause is strikingly similar to the clause in *Rent-A-Center*:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Rent-A-Ctr.*, 561 U.S. at 66 (citation omitted). These clauses are almost identical. It inevitably follows that the clause in this case is a valid and enforceable delegation clause. Just as in *Rent-A-Center*, *see id.* at 68–69, the parties agreed that the arbitrator and not the court should be the decisionmaker on whether

a given claim is arbitrable.

Kubala does not engage with this line of reasoning and authority. Nor does he articulate any fallback argument for why, even if the agreement is valid and the delegation clause is enforceable, there is some external reason (under federal labor law or otherwise) that prevents his claim from being sent to arbitration. Instead, he makes a variety of contract-interpretation arguments designed to show that the arbitration agreement does not apply retroactively to claims filed before it went into effect. But those are precisely the sort of issues that, in the presence of a valid delegation clause, we cannot resolve. Thus, we do not opine on whether the agreement requires that the merits of Kubala's claim be arbitrated rather than tried in court. The only issue now is who answers that question. It is plainly the right and responsibility only of the arbitrator.

The order denying Supreme's motion to dismiss for the purpose of compelling arbitration is REVERSED, and this matter is REMANDED with direction for the district court to refer the dispute to arbitration.

No. 15-41507

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

Ted Kubala sued Supreme for denying him overtime pay. Two days later, Supreme presented him with a "take it or leave it" arbitration agreement. Supreme now claims that that agreement's delegation clause governs Kubala's preexisting suit.

Supreme's claim has troubling implications. The Fair Labor Standards Act (FLSA) affords employees a federal forum for their claims.[1] It is beyond dispute that an employer may not fire an employee for filing a FLSA suit.[2] Similarly, an employer's threat to discharge an employee who refuses to withdraw a suit would sit uneasily with the law.[3] But what if a Texas employer with no extant arbitration agreement, once notified of an employee's FLSA suit, threatens to fire the employee unless he agrees to arbitrate the suit? Its threat would coerce the plaintiff into relinquishing his FLSA-given right to decision by an independent judiciary for private decision by appointed private

---

[1] 29 U.S.C. § 216(b).

[2] *Id.* § 215(a)(3); *see LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263-64 (5th Cir. 1986); *Goldberg v. Bama Mfg. Corp.*, 302 F.2d 152, 154 (5th Cir. 1962). Of course, an employee's right to be free from retaliation under the FLSA and similar statutes is unrelated to the merit of her suit. Indeed, the phenomenon of employment discrimination suits falling away on the merits only to rise again as retaliation claims is commonplace. *See generally Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 & n.24 (5th Cir. 2000); Romella Janene El Kharzazi et al., *Retaliation – Making it Personal*, EQUAL EMPL. OPPORTUNITY COMM'N, https://www.eeoc.gov/laws/types/retaliation_considerations.cfm ("[R]etaliation has been the most frequently alleged basis of discrimination in the federal sector since fiscal year 2008. In addition, the number of discrimination findings based on a retaliation claim has outpaced other bases of discrimination. . . . In a large number of these cases, it is common for an original discrimination allegation (on a basis other than retaliation) [to] fail to establish a violation of the law, but the subsequent retaliation allegation results in a discrimination finding.").

[3] *Cf. Brandon v. Sage Corp.*, 808 F.3d 266, 271 (5th Cir. 2015) (in a Title VII case, entertaining the "possibility that a realistic, drastic pay cut threat might deter someone from supporting a discrimination charge in certain circumstances," giving rise to an actionable retaliation claim).

No. 15-41507

arbitrators, just as powerfully as if the employer had demanded he drop the suit outright. With all deference to the judiciary's recent and warm embrace of arbitration, who decides and whether it is a public or private proceeding matters a great deal, arriving on stage as it does redolent with large concerns attending a regime of contracting out justice – when consent so often must be blind to inequality of bargaining power.

In my view, neither the FLSA nor Texas's sanction of "take it or leave it" employment agreements easily suffer such a threat, and an arbitration agreement exacted through one is of questionable validity. I do not discern a contrary view in the Supreme Court's arbitration jurisprudence, nor do I read our opinion to reach this issue. Indeed, Supreme insists it was unaware of Kubala's suit until well after the arbitration agreement became effective, and Kubala offers no argument or evidence in opposition - only insinuations. That aside, he briefs no arguments, FLSA-related or otherwise, specific to the agreement's delegation clause, which a sharply divided Court in *Rent-a-Center* held is a separate and severable arbitration agreement, a decision we properly apply with the force it commands.[4] Today, I only caution that we ought do no more.

Given this, I agree that the arbitrability of Kubala's suit must itself be arbitrated, and concur in today's well-stated opinion.

---

[4] *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72-73 (2010).