# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-41674

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2017

Lyle W. Cayce
Clerk

ARCHER AND WHITE SALES, INC.,

Plaintiff-Appellee

v.

HENRY SCHEIN, INC., DANAHER CORPORATION,
INSTRUMENTARIUM DENTAL INC., DENTAL EQUIPMENT LLC, KAVO
DENTAL TECHNOLOGIES LLC, AND DENTAL IMAGING
TECHNOLOGIES CORPORATION,

Defendants-Appellants

Appeals from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Sued by a competitor for antitrust violations, Defendants-Appellants sought to enforce an arbitration agreement. The magistrate judge granted the motion to compel arbitration, holding that the gateway question of the arbitrability of the claims belonged to an arbitrator. The district court reversed, holding it had the authority to rule on the question of arbitrability and the claims at issue were not arbitrable. We now affirm.

## I.

Five years ago, Plaintiff-Appellee Archer and White Sales, Inc. ("Archer"), a distributor, seller, and servicer for multiple dental equipment

No. 16-41674

manufacturers, brought this suit against Defendant-Appellants Henry Schein, Inc. and Danaher Corporation, allegedly the largest distributor and manufacturer of dental equipment in the United States, and certain wholly-owned subsidiaries of Danaher.

The suit alleges violations of Section 1 of the Sherman Antitrust Act and the Texas Free Enterprise and Antitrust Act, contending that the Defendants' activities occurred over the preceding four years and are "continuing" violations, and seeking both damages ("estimated to be in the tens of millions of dollars") and injunctive relief.[1] The district court referred the case to a United States Magistrate Judge.

Defendants moved to compel arbitration pursuant to a clause in a contract between Archer and Pelton & Crane, allegedly a Defendant's predecessor-in-interest (the "Dealer Agreement"). The arbitration clause reads as follows:

> Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)].

---

[1] Archer alleges that Defendants conspired "to fix prices and refuse to compete with each other" and to "force their common supplier Danaher and its various subsidiaries to terminate and/or reduce the distribution territory of their price-cutting distributor Archer Dental." It also alleges that the Defendants "carried out their conspiracy through a series of unlawful activities, including, but not limited to agreements not to compete, agreements to fix prices, and boycotts."

2

No. 16-41674

The place of arbitration shall be in Charlotte, North Carolina.

Following a hearing, the magistrate judge issued a Memorandum Order holding that: (1) the incorporation of the AAA Rules in the arbitration clause clearly evinced an intent to have the arbitrator decide questions of arbitrability; (2) there is a reasonable construction of the arbitration clause that would call for arbitration in this dispute; and (3) the *Grigson* equitable estoppel test, which both sides agree is controlling in their dispute, required arbitration against both signatories and non-signatories to the Dealer Agreement.[2]

The district court vacated the magistrate judge's order and held that the court could decide the question of arbitrability, and that the dispute was not arbitrable because the plain language of the arbitration clause expressly excluded suits that involved requests for injunctive relief. The court declined to reach the question of equitable estoppel.[3]

Defendants appealed.[4]

## II.

We review a ruling on a motion to compel arbitration *de novo*.[5] "Enforcement of an arbitration agreement involves two analytical steps."[6] First, a court must decide "whether the parties entered into *any arbitration*

---

[2] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-cv-572-JRG-RSP, 2013 WL 12155243 (E.D. Tex. May 28, 2013), *vacated*, 2016 WL 7157421 (E.D. Tex. Dec. 7, 2016).

[3] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-cv-572-JRG, 2016 WL 7157421, at *9 (E.D. Tex. Dec. 7, 2016).

[4] Defendants filed an interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1)(C). *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 419 (5th Cir. 2014) ("Title 9 U.S.C. section 16(a)(1)(C) provides that a party may seek interlocutory review of an order . . . denying an application . . . to compel arbitration.") (internal quotation marks omitted).

[5] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2012) (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)).

[6] *Kubala*, 830 F.3d at 201 (5th Cir. 2012).

*agreement at all.*"[7] This inquiry is one of pure contract formation, and it looks only at whether the parties "form[ed] a valid agreement to arbitrate some set of claims."[8] The next step is to determine "whether [the dispute at issue] is covered by the arbitration agreement."[9] Before this step, however, the court must answer a third question: "[w]*ho should have the primary power to decide'* whether the claim is arbitrable."[10] This question turns on "whether the agreement contains a valid delegation clause—'that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated.'"[11]

This determination begins the two-step inquiry adopted in *Douglas v. Regions Bank.*[12] First, whether the parties "clearly and unmistakably" intended to delegate the question of arbitrability to an arbitrator.[13] If so, "the motion to compel arbitration should be granted in almost all cases."[14] But not "[i]f the argument that the claim at hand is within the scope of the arbitration agreement is 'wholly groundless.'"[15] So *Douglas*'s second step asks whether there is a plausible argument for the arbitrability of the dispute. Where there is no such plausible argument, "the district court may decide the 'gateway' issue of arbitrability despite a valid delegation clause.'"[16]

---

[7] *Id.*

[8] *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017).

[9] *Kubala*, 830 F.3d at 201.

[10] *Id.* at 202 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).

[11] *IQ Prods.*, 871 F.3d at 348 (quoting *Kubala*, 830 F.3d at 202).

[12] 757 F.3d 460, 464 (5th Cir. 2014).

[13] "[C]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options*, 514 U.S. at 944 (citing *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986)).

[14] *Kubala*, 830 F.3d at 202.

[15] *Douglas*, 757 F.3d at 464.

[16] *IQ Prods.*, 871 F.3d at 349.

No. 16-41674

The parties agree that the Dealer Agreement contained an arbitration provision, though not whether the arbitration provision applies here.[17] Specifically, they disagree on whether the court or an arbitrator should decide the gateway question of arbitrability—and relatedly, whether the underlying dispute is arbitrable at all. We turn to the two-step *Douglas* test.

## A.

We first ask if the parties "clearly and unmistakably" delegated the issue of arbitrability.[18] Absent a delegation, "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[19] "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter.'"[20]

A contract need not contain an express delegation clause to meet this standard. An arbitration agreement that expressly incorporates the AAA Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."[21] Under AAA Rule 7(a), "the arbitrator shall have the power to

---

[17] Archer states that, because the Dealer Agreement "unambiguously divides disputes into two categories"—those within the carve-out and all other disputes—there is no valid agreement to arbitrate. This argument misconstrues the very first analytical step in enforcement of an arbitration agreement, which asks "whether the parties entered into *any arbitration agreement at all*." Archer does not appear to argue that there was no arbitration agreement regarding claims outside the scope of the carve-out. Instead, Archer contends that the Dealer Agreement is "best construed to express the parties' intent not to arbitrate this action seeking injunctive relief." Thus, we treat Archer's arguments to this effect as going to whether the parties agreed to arbitrate this particular dispute.

[18] *AT&T*, 475 U.S. at 649.

[19] *Id.*

[20] *First Options*, 514 U.S. at 943 (internal citations omitted). *See also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (holding that parties may delegate arbitrability through an express delegation clause).

[21] *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[22]

By the Dealer Agreement, "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration *in accordance with the arbitration rules of the American Arbitration Association.*" The parties dispute the relationship between the carve-out clause—"except for actions seeking injunctive relief and [intellectual property] disputes"—and the incorporation of the AAA Rules.

The magistrate judge saw three separate parts to the arbitration provision: (1) a general rule compelling arbitration for any dispute related to the agreement, (2) an exemption from arbitration for actions seeking injunctive relief, and (3) a clause incorporating the AAA Rules.[23] On this reading, the AAA Rules would apply to all disputes arising under the contract, including those eventually found to fall within the Dealer Agreement's carve-out. The district court disagreed, holding that the carve-out clause removed the disputes from the ambit of both arbitration and the AAA Rules. The district court distinguished *Petrofac*, where the agreement at issue "did not contain any exclusions[;] [r]ather, it was a standard broad arbitration clause."[24]

Defendants argue that *Petrofac* controls; that, by holding otherwise, the district court conflated the issue of whether the dispute is arbitrable with the issue of who decides arbitrability; and that, under the plain language of the clause, disputes about arbitrability do not fall within the carve-out and thus

---

[22] This version of Rule 7(a) was in effect when the parties signed their agreement. AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDIATION PROCEDURES (2007), https://www.adr.org/sites/default/files/Commercial%20Arbitration%20Rules%20and%20Me diation%20Procedures%20Sept.%201%2C%202007.pdf.

[23] *Archer*, 2013 WL 12155243 at *1.

[24] *Archer*, 2016 WL 7157421, at *7.

belong to the arbitrator. This court has previously applied *Petrofac* to arbitration provisions containing carve-out provisions. In *Crawford*, we examined an agreement that incorporated the AAA Rules and preserved the parties' ability to seek injunctive relief in the courts.[25] We held—without directly addressing the relevance of its carve-out provision—that the *Crawford* agreement's incorporation of the AAA Rules constituted "clear and unmistakable evidence that the parties to the [] Agreement agreed to arbitrate arbitrability, and so . . . whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court."[26]

Archer responds that the agreement in *Petrofac* did not include a carve-out provision, and the *Crawford* agreement is distinguishable because it contained separate clauses incorporating the AAA Rules and creating a carve-out excluding claims for injunctive relief—specifically, the agreement stated that the AAA Rules would apply to "[a]ny and all disputes in connection with or arising out of the Provider Agreement," and contained a carve-out in a

---

[25] *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014). In that case, the Provider Agreement read, in relevant part:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of Law, and may only award remedies provided for in the Provider Agreement. . . . Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law . . . .

*Id.*

[26] *Id.* at 263. Defendants also point to *Oracle*, where the Ninth Circuit addressed an arbitration clause that adopted the UNCITRAL Rules (which also delegate arbitrability issues to the arbitrator) and a carve-out for certain types of claims. The court rejected the argument that the carve-out provision bore on the question of arbitrability, stating that such an argument "conflates the *scope* of the arbitration clause . . . with the question of *who* decides arbitrability." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072–76 (9th Cir. 2013).

subsequent sentence stating that nothing in the agreement would prevent a suit seeking injunctive relief in a court of law.[27]

Archer argues that, in contrast, the structure of the specific carve-out at issue here leads to the natural reading that the AAA Rules only apply to the category of cases that are subject to binding arbitration under the Dealer Agreement—namely, those outside of the contract's express carve-out. Archer further notes that Defendants' predecessor-in-interest drafted the Dealer Agreement, and that North Carolina law requires that "[p]ursuant to well[-]settled contract law principles, the language of [an] arbitration clause should be strictly construed against the drafter of the clause."[28]

There is a strong argument that the Dealer Agreement's invocation of the AAA Rules does not apply to cases that fall within the carve-out. It is not the case that any mention in the parties' contract of the AAA Rules trumps all other contract language. Here, the interaction between the AAA Rules and the carve-out is at best ambiguous. On one reading, the Rules apply to "[a]ny dispute arising under or related to [the] Agreement." On another, the provision expressly exempts certain disputes and the Rules apply only to the remaining disputes. We need not decide which reading to adopt here because *Douglas* provides us with another avenue to resolve this issue: the "wholly groundless" inquiry.

**B.**

Regardless of whether an agreement clearly and unmistakably delegates the question of arbitrability, the second step in *Douglas* provides a narrow

---

[27] *Crawford*, 748 F.3d at 256.
[28] *T.M.C.S., Inc. v. Marco Contractors, Inc.*, 780 S.E.2d 588, 597 (N.C. Ct. App. 2015).

escape valve. If an "assertion of arbitrability [is] wholly groundless," the court need not submit the issue of arbitrability to the arbitrator.[29]

We have cautioned that the "wholly groundless" exception is a narrow one and that it "is not a license for the court to prejudge arbitrability disputes more properly left to the arbitrator pursuant to a valid delegation clause."[30] "An assertion of arbitrability is not 'wholly groundless' if 'there is a legitimate argument that th[e] arbitration clause covers the present dispute, and, on the other hand, that it does not.'"[31] If a court can find "a 'plausible' argument that the arbitration agreement requires the merits of the claim to be arbitrated," the wholly groundless exception will not apply.[32]

The magistrate judge issued his order before *Douglas*, and therefore he did not address the "wholly groundless" exception directly. Instead, he found that while "[o]n the most superficial level, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that relief," there was also "a plausible construction [of the Dealer Agreement] calling for arbitration."[33] Thus, he concluded that "the question of whether the exception for actions seeking injunctive relief should be limited to actions for an injunction in aid of arbitration or to enforce an arbitrator's award should properly be left for the arbitrator to decide."[34]

The district court, now with *Douglas* at hand, found the Defendants' arguments for arbitrability wholly groundless. The court first stated that the wholly groundless inquiry "necessarily requires the courts to examine and, to

---

[29] *Douglas*, 757 F.3d at 463 (quoting *Agere Systems, Inc. v. Samsung Elecs. Co.*, 560 F.3d 337, 340 (5th Cir. 2009)).
[30] *Kubala*, 830 F.3d at 202 n.1.
[31] *IQ Prods.*, 871 F.3d at 350 (quoting *Douglas*, 871 F.3d at 463).
[32] *Kubala*, 830 F.3d at 202 n.1.
[33] *Archer*, 2013 WL 12155243, at *1–2.
[34] *Id.* at *2.

a limited extent, construe the underlying agreement."[35] It then noted that the Dealer Agreement's carve-out language "differs from the standard arbitration clause suggested by [AAA],"[36] and found that "the phrase 'except actions seeking injunctive relief' is clear on its face—any action seeking injunctive relief is excluded from mandatory arbitration."[37] Thus, the provision's plain language includes all actions seeking injunctive relief, not a more limited category of cases. The court declined to "re-write the terms of the Parties' agreement to accommodate a party—notably the party that drafted the agreement—that could have negotiated for more precise language,"[38] and held that the arguments for arbitrability were "wholly without merit based on the plain language of the arbitration clause itself" and fell squarely within the *Douglas* exception.[39]

Defendants suggest a limited reading of the "wholly groundless" exception that would only apply when the contract containing the arbitration provision has "nothing to do with" the dispute before the court.[40] In *Douglas*,

---

[35] *Archer*, 2016 WL 7157421, at *8 (quoting *Douglas*, 757 F.3d at 463) (internal quotation marks omitted). This limited inquiry allows the parties to avoid jumping through hoops to begin arbitration only to be sent directly back to the courthouse. *See Douglas*, 757 F.3d at 464 ("When [plaintiff] signed the arbitration agreement containing a delegation provision, did she intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court? Obviously not.").

[36] The district court claimed that "[s]uch an intentional drafting effort" deserves notice. *Archer*, 2016 WL 7157421, at *5.

[37] *Id.*

[38] *Id.* at *6.

[39] *Archer*, 2016 WL 7157421, at *9. The district court also rejected arguments from Defendants that Archer failed to "plead" a claim for injunctive relief based on the fact that Archer had not made any showing on the factors articulated by the Supreme Court in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). The court held first that the *eBay* factors are not pleading requirements, and that in any event, the proper vehicle to argue the plaintiff is not entitled to relief would be a motion to dismiss under Rule 12. We do not address the underlying merits of Archer's claim here because, as Defendants concede, "the issue here is not whether Archer's injunctive relief claim fails on the merits."

[40] *Douglas*, 757 F.3d at 461.

the plaintiff had signed an agreement with an arbitration provision when she opened a checking account with Regions Bank that closed less than one year later. Years later, the plaintiff was involved in an automobile accident, and she received a $500,000 settlement in subsequent litigation. She then alleged that her attorney, who banked with Regions, had embezzled that money, and she brought suit against the bank for negligence and conversion on the theory that the bank had notice of the embezzlement and failed to report it. Regions moved to compel arbitration pursuant to the agreement that the plaintiff signed when she opened the now-closed checking account. This court held that "[t]he mere existence of a delegation provision in the checking account's arbitration agreement . . . cannot possibly bind [the plaintiff] to arbitrate gateway questions of arbitrability in *all* future disputes with the other party, no matter their origin."[41]

Defendants argue that applying the "wholly groundless" exception here would allow the court to construe the bounds of an arbitration clause before an arbitrator can do so—effectively obviating the entire purpose of delegating the gateway question to the arbitrator in the first place; that their arbitrability arguments are not wholly groundless, pointing to the magistrate judge's finding of plausible readings of the arbitration clause that would not exclude the suit from arbitration; and that doubts about the arbitrability of a claim should be resolved in favor of arbitration, pursuant to settled federal law.

Defendants urge that "[t]he correct reading of this arbitration clause is that the parties may come to court seeking injunctive relief at any time . . . but still must arbitrate any claim for damages." Defendants further urge the court should send the damages clause to arbitration, even if it results in "piecemeal litigation." In their view, "[t]he correct reading of this arbitration clause is that

---

[41] *Id.* at 462, 464.

the parties may come to court seeking injunctive relief at any time . . . but still must arbitrate any claim for damages."

Archer counters that the plain language of the clause makes clear that the parties did not agree to arbitrate *actions* that involve a request for injunctive relief, and that any argument to the contrary is wholly groundless. Archer emphasizes that arbitration agreements are "as enforceable as other contracts, but not more so,"[42] and states that under North Carolina law, "when the terms of a contract are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written and enforced as the parties have made it."[43] Archer says the Dealer Agreement clearly contemplates two categories of disputes—those involving "actions seeking injunctive relief" and certain intellectual property disputes, and all other disputes—and that only the latter category must be subject to arbitration. Archer contends that the clause's incorporation of "action" prohibits any piecemeal litigation because "action," as distinct from "claim," pertains to all of the claims in a given case.[44]

While *Douglas* is a recent case, with contours of the "wholly groundless" exception not yet fully developed, if the doctrine is to have any teeth, it must apply where, as here, an arbitration clause expressly excludes certain types of disputes. The arbitration clause creates a carve-out for "actions seeking injunctive relief." It does not limit the exclusion to "actions seeking *only* injunctive relief," nor "actions for injunction in aid of an arbitrator's award." Nor does it limit itself to only *claims* for injunctive relief. Such readings find no footing within the four corners of the contract. "When the language of a

---

[42] *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967).

[43] *State v. Phillip Morris USA Inc.*, 685 S.E.2d 85, 91 (N.C. 2009) (internal quotation marks omitted) (internal citations omitted).

[44] An action is "[a] civil or criminal judicial proceeding," which is "nearly if not quite synonymous" with suit. BLACK'S LAW DICTIONARY 28–29 (7th ed. 1999).

contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit."[45]  We see no plausible argument that the arbitration clause applies here to an "action seeking injunctive relief." The mere fact that the arbitration clause allows Archer to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, *or reach a result inconsistent with the plain text of the contract*, simply because the policy favoring arbitration is implicated."[46]

### III.

Defendants argue in the alternative that, even if the district court was correct to decide the issue of arbitrability, it erred in determining that the complaint was not subject to the arbitration clause. Because we find that Defendants' arguments for arbitrability are wholly groundless, we affirm the district court's holding that the claims are not arbitrable. Having concluded that this action is not subject to mandatory arbitration, we need not reach the question of whether the third parties to the arbitration clause in this case can enforce such an arbitration clause.

We affirm the district court's order denying the motions to compel arbitration.

---

[45] *Procar II, Inc. v. Dennis*, 721 S.E.2d 369, 371 (N.C. Ct. App. 2012).

[46] *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (emphasis added).