Filed 6/8/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RYAN SMYTHE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>     Defendant and Appellant. | A149891<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC16552035) |

Uber Technologies, Inc. (Uber) appeals from an order denying its motion to compel arbitration of an action brought by Ryan Smythe in his capacity as a driver for Lyft, Inc. (Lyft). Smythe also drives for Uber. The court correctly found the action is beyond the scope of Smythe's arbitration agreement with Uber, so we affirm.

**BACKGROUND**

During the relevant period Smythe worked as a driver for both Uber and Lyft, Inc., Uber's direct competitor. His complaint alleges that Uber engaged in a practice of directing its drivers and others to create and use fake Lyft accounts to request rides, thereby sending Lyft drivers on wild goose chases to pick up nonexistent passengers. According to the complaint, Uber did this to discourage drivers from driving for Lyft and cause Lyft customers to steer their patronage to Uber. The complaint asserted causes of action for unfair business practices and intentional interference with prospective economic damage on behalf of a putative class of Lyft drivers affected by the alleged scheme.

1

Uber moved to compel arbitration and stay the class claims. According to Uber, when Smythe became a driver on the Uber platform he signed two agreements containing arbitration provisions with Uber-related entities (the Rasier Agreements). The more recent and operative agreement, dated November 2014, states, "[t]his Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement." The agreement goes on to specify that it applies 'without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to your relationship with the Company, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state or federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974 or funded by insurance), Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims. [¶] This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision."

The agreement includes a delegation clause specifying that the disputes subject to arbitration "include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an arbitrator and not by a court or judge."

The trial court found Smythe's allegations were beyond the scope of the arbitration agreement and that the delegation provision was unenforceable in the context

of the claims advanced in Smythe's complaint. "[P]laintiff's claims are independent of the rights and responsibilities conferred upon him under the Rasier agreements. Therefore, no part of the Rasier Agreements, including the delegation clause, can be enforced against plaintiff in this case."

Uber filed this timely appeal from the court's order.

## DISCUSSION

Uber asserts the court erred by adjudicating the threshold question of whether the arbitration provision covers Smythe's complaint. In Uber's view, "Because the Arbitration Provision delegates the issues of arbitrability to an arbitrator, this Court should direct the trial court to leave all of Mr. Smythe's arbitrability questions for the arbitrator to decide in the first instance." Alternatively, Uber urges us to reverse the trial court's decision and remand with an instruction to compel arbitration because, it asserts, Smythe's claims fall within the scope of the arbitration provision. We disagree.

### A. Legal Principles

We recognize the strong public policy in favor of arbitration and that we resolve any doubts in favor of arbitration. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890 (*Aanderud*); *Bono v. David* (2007) 147 Cal.App.4th 1055, 1062-1063.) Moreover, the party opposing arbitration bears the burden to show the arbitration provision cannot be interpreted to cover the claims asserted in the complaint. But, " '[t]here is no public policy . . . that favors the arbitration of disputes which the parties did not agree to arbitrate.' " (*Bono v. David, supra*, at p. 1063)

*Qualcomm Inc. v. Nokia Corp.* (Fed. Cir. 2006) 466 F.3d 1366 (*Qualcomm*) provides the analytic framework where, as here, the parties' agreement delegates the power to decide arbitrability of a dispute to an arbitrator. "[I]n order to be 'satisfied' of the arbitrability of an issue pursuant to section 3 of the FAA [Federal Arbitration Act],[1]

---

[1] Section 3 of the FAA provides for a stay of legal proceedings when the issues in dispute are subject to an arbitration agreement. Pursuant to the statutory language, the trial court must stay the trial in favor of arbitration if it is "satisfied" that the dispute is

3

the district court should first inquire as to who has the primary power to decide arbitrability under the parties' agreement. If the court concludes that the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule that the 'question of arbitrability . . . is . . . for judicial determination' applies and the court should undertake a full arbitrability inquiry in order to be 'satisfied' that the issue involved is referable to arbitration.' [Citation.]" (*Id.* at p. 1371.)

But if, on the other hand, "the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.' [Citation.] If the court finds that the assertion of arbitrability is not 'wholly groundless,' then it should stay the trial of the action pending a ruling on arbitrability by an arbitrator. If the district court finds that the assertion of arbitrability is 'wholly groundless,' then it may conclude that it is not 'satisfied' under [FAA] section 3, and deny the moving party's request for a stay." (*Qualcomm, supra*, 466 F.3d at p. 1371; *Zenelaj v. Handybook Inc.* (N.D. Cal. 2015) 82 F.Supp.3d 968, 975.) A delegation clause will be given effect when there is a plausible argument that the arbitration agreement requires the merits of the claim to be arbitrated, and cases where an assertion of arbitrability is "wholly groundless" are exceptional. (*Kubala v. Supreme Production Services, Inc.* (5th Cir. 2016) 830 F.3d 199, 202 & fn. 1 (*Kubala*).) California law is consistent with federal law on this question. (*Qualcomm, supra,* 466 F.3d at 1372, citing *Dream Theater, supra*, at p. 553; see *McCarroll v. Los Angeles County District Council of Carpenters* (1957) 49 Cal.2d 45, 65.)

The evidence in the trial court was not conflicting, so our review of the trial court's ruling on arbitrability is de novo. (*Aanderud, supra,* 13 Cal.App.5th at p. 234; *Qualcomm, supra,* 466 F.3d at p. 1371.)

## B. Analysis

---

arbitrable. (*Qualcomm, supra*, at p. 1370; *Dream Theater Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 553 (*Dream Theater*.)

4

There is no dispute that parties to arbitration agreements are generally free to delegate to an arbitrator, instead of a court, questions regarding the enforceability of their agreement. (See, e.g., *Aanderud, supra*, 13 Cal.App.5th at pp. 891–892.) Nor is it subject to dispute that the agreement at issue here includes a delegation provision that commits threshold questions regarding the application and enforceability of the arbitration provision to the arbitrator. For that reason, we need not dwell on Uber's extensive arguments on these issues, and instead accept the point. The question, rather, is whether Uber's assertion of arbitrability here is "wholly groundless" because the issues raised in Smythe's complaint are patently beyond the scope of the parties' agreement to arbitrate. (See *Qualcomm, supra*, 466 F.3d at 1371; see *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252 [" ' "a party cannot be required to submit to an arbitration any dispute which he had not agreed so to submit" ' "].)

We readily conclude the arbitration agreement cannot apply to this action. By its terms, Uber's arbitration provision applies to disputes "arising out of or related to" the Rasier agreements and "disputes arising out of or related to [the driver's] relationship" with Uber. But Smythe's action against Uber has nothing to do with the Rasier agreements or his rights and responsibilities as an Uber driver. To the contrary, Smythe brought his action in his capacity as a driver for Lyft, not Uber, and alleges only that he and other Lyft drivers incurred expenses and lost income when they responded to fraudulent ride requests generated at Uber's instigation. There is no "plausible argument" (*Kubala, supra,* 830 F.3d at p. 202) that those claims are related to or arise out of the agreements Smythe entered into with Uber "for the purpose of receiving the [Uber] Service" i.e., to access app-based ride requests from Uber passengers. Indeed, the same allegations could just as well be pursued by a Lyft driver who does not drive for Uber. Uber's attempt to cast this as a dispute about Smythe's "dual identity" as a driver with both Lyft and Uber thus misses the mark. This action is premised on Smythe's activities driving for Lyft, and has nothing to do with his "identity" as a driver for Uber. The trial

5

court correctly found the arbitration provision in Smythe's agreement with Uber inapplicable in these circumstances.

A Fifth Circuit opinion, *Douglas v. Regions Bank* (5th. Cir. 2014) 757 F.3d 460 (*Douglas*), is analogous. When Douglas opened an account with Regions Bank she signed an arbitration agreement that, like Uber's, delegated questions of arbitrability to an arbitrator. Douglas's attorney later embezzled her proceeds from the settlement of a personal injury action. Douglas sued Regions Bank, where her attorney also had an account, on the ground that the bank negligently failed to report the embezzlement, make reasonable inquiries or prevent further diversions from her account. (*Id*. at p. 461)

The bank moved to compel arbitration, but to no avail. Applying the test articulated in *Qualcomm* the Fifth Circuit observed: "what must be arbitrated is a matter of the parties' intent. [Citation.] When Douglas signed the arbitration agreement containing a delegation provision, did she intend to go through the rigmaroles of arbitration just so the arbitrator can tell her in the first instance that her claim has nothing whatsoever to do with her arbitration agreement, and she should now feel free to file in federal court? Obviously not. [¶] . . . We conclude that when she agreed to arbitrate 'the validity, enforceability, or scope of this Arbitration provision,' Douglas did not intend to bind herself for life to gateway arbitration for any and all claims that ever might exist between her and Regions. She meant only to bind herself to arbitrate gateway questions of arbitrability if the argument that the dispute falls within the scope of the agreement is not wholly groundless." (*Douglas, supra*, 757 F.3d At p. 464; but see *Jones v. Waffle House, Inc.* (11th Cir. 2017) 866 F.3d 1257, 1269–1269 [rejecting *Qualcomm* rule].) The same holds true here. Uber is correct that broad arbitration agreements like its own " 'reach[] every dispute between the parties *having a significant relationship to the contract and all disputes having their origin or genesis in the contract*' " (quoting *Simula, Inc. v. Autoliv, Inc.* 9th Cir. 1999) 175 F.3d 716, 721), but this action, like Douglas's suit against the bank, presents no such dispute.

In oral argument, counsel for Uber argued that this case should be governed by *Aanderud*. We disagree. *Aanderud* considered whether a delegation clause was unenforceable because it was ambiguous or unconscionable. (*Aanderud, supra,* 13 Cal.App.5th at pp. 891–894.) Here, we accept that the delegation clauses in the Rasier agreements clearly direct the arbitrator to determine arbitrability. Neither is unconscionability an issue in this case. But our determination that the delegation clauses are not unenforceable for such reasons lead us to the "second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless." (*Qualcomm, supra,* 466 F.3d at p. 1371.) *Aanderud* has no application to this second inquiry.

Uber argues that *Mohammed v. Uber Technologies, Inc.* (9th Cir. 2016) 848 F.3d 1201 (*Mohammed*) and other cases in which courts have enforced Uber's arbitration agreement and, specifically, its delegation provision, mandate that an arbitrator, not the court, must decide whether Smythe's claims are subject to arbitration. Not so. In none of those cases was it (or could it have plausibly been) argued that the dispute at issue was beyond the scope of the arbitration agreement. The complaint in *Mohammed*, for example, alleged that Uber drivers were misclassified as independent contractors rather than employees—allegations that were clearly and unmistakably related to the plaintiffs' relationship with Uber. The plaintiffs unsuccessfully challenged the delegation provisions as unconscionable and insufficiently clear, but made no claim that their allegations were beyond the scope of the arbitration agreement. (*Id.* at p. 1208.) *Suarez v. Uber Technologies, Inc.* (11th Cir. May 18, 2017, No. 16-13263) 2017 WL 2197812 [non-pub. opn.], similarly rejected claims that agreements between Uber and Uber drivers were unconscionable. Uber's other citations on this point are inapposite for the same reasons: in each the plaintiff's claims involved the relationship between Uber and its drivers, and in none was there a claim that the dispute was beyond the scope of the parties' agreement to arbitrate. (See *Varon v. Uber Technologies, Inc.* (D.Md., May 3, 2016, No. MJG-1504650) 2016 WL 1752835 [non-pub. opn.] [rejecting challenges to arbitration provision based on unconscionability and lack of clear and unmistakable

7

intent in case challenging Uber's practices regarding gratuities]; *Bruster v. Uber Technologies, Inc.* (N.D. Ohio 2016) 188 F.Supp.3d 658, 665 [unconscionability challenge; wage and state labor law claims]; *Sena v. Uber Technologies, Inc.* (D. Ariz. Apr. 7, 2016, No. CV-15-12418-PHX-DLR) 2016 WL 1376445 [non-pub. opn.] [unconscionability].)

It would be a different matter if, as Uber argues, Smythe's complaint alleged violations of California wage and hour laws. In fact, the original complaint does include a paragraph that alleges, "Defendants' violations of California wage and hour laws constitute unfair business practices because they were done repeatedly over a significant period of time, and in a systematic manner to the detriment of Plaintiffs. Furthermore, California Labor Code § 90.5 articulates the public policies of this State to enforce vigorously minimum labor standards, to ensure employees are not required or permitted to work under substandard and unlawful conditions, and to protect law abiding employers and their employees from competitors who lower their costs by failing to comply with minimum labor standards." Nonetheless, the complaint is completely devoid of factual allegations supporting or even alluding to such a claim. Queried about this in the trial court, Smythe's counsel told the court the quoted language was the result of a drafting error, and requested leave to amend "with the apologies that this was not caught sooner. It is not a wage-and-hour claim in any sense of the word." Smythe subsequently submitted an amended complaint that omits any wage and hour claim. The trial court implicitly accepted his explanation, and we have no basis to question that decision.

Lastly, Uber argues Smythe's complaint is sufficiently related to or "touch[es] matters covered by" the Rasier agreement (see *Simula, supra*, 175 F3d at p. 721) to require arbitration on the strength of section 4.7 of the agreement. Section 4.7 provides: "No Additional Amounts. You acknowledge and agree that, for the mutual benefit of the parties, through advertising and marketing, Company and its Affiliates may seek to attract new Users to Uber and to increase existing Users' use of Uber's mobile application. You acknowledge and agree such advertising or marketing does not entitle

8

you to any additional monetary amounts beyond the amounts expressly set forth in this Agreement."[2]   This, according to Uber, places Smythe's claims within the scope of the Rasier agreement because their gravamen is that Uber improperly contacted Lyft drivers "with the ultimate goal of increasing ridership." [3]   It does not.  Section 4.7 concerns Uber's advertising and marketing to potential passengers.  Sending its primary competitor's drivers on wild goose chases to pick up nonexistent passengers, whether or not with the aim of increasing its own ridership, cannot plausibly be called "advertising or marketing."

We are satisfied that under these circumstances "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  (*AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 U.S. 643, 650.)  Accordingly, the trial court properly declined to compel arbitration.

## DISPOSITION

The order is affirmed.

---

[2] The agreement defines "user" as "an end user authorized by Uber to use the Uber mobile application for the purpose of obtaining Transportation Services offered by Company's transportation provider customers"—in other words, Uber's passengers.

[3] In the trial court Uber represented this clause as "say[ing] . . . that Uber is going to use efforts to recruit drivers, "not passengers."

_____

Siggins, J.

We concur:

_____

McGuiness, Acting P.J. [*]

_____

Pollak, J.

_____

[*] Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

Trial Court:                                City and County of San Francisco
                                           Superior Court


Trial Judge:                                Honorable Mary E. Wiss

Counsel for Defendant and Appellant:

William L. Stern, Claudia M. Vetesi, Morrison & Foerster LLP.

Counsel for Plaintiff and Respondent:

R. Parker White, William L. Brelsford, Poswall, White, & Brelsford.

Jeffrey D. Fulton, Law Office of Jeffrey D. Fulton.