# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2019

Lyle W. Cayce
Clerk

No. 16-41674

ARCHER AND WHITE SALES, INCORPORATED,

　　　　Plaintiff - Appellee

v.

HENRY SCHEIN, INCORPORATED; DANAHER CORPORATION; INSTRUMENTARIUM DENTAL, INCORPORATION; DENTAL EQUIPMENT, L.L.C.; KAVO DENTAL TECHNOLOGIES, L.L.C.; DENTAL IMAGING TECHNOLOGIES, CORPORATION,

　　　　Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas

ON REMAND FROM THE UNITED STATES SUPREME COURT

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:

In light of the Supreme Court's decision, we consider anew the question of whether the parties in this dispute delegated the threshold arbitrability determination to an arbitrator. After being sued for antitrust violations, defendants in this suit sought to enforce an arbitration agreement. Initially, the magistrate judge granted a motion to compel arbitration, concluding that the question of arbitrability of the claims itself belonged to an arbitrator. The district court disagreed, holding that the arbitrability question was one for the

No. 16-41674

courts. This panel affirmed.[1] We determined that we need not reach the issue of whether the arbitration provision delegated the issue of arbitrability to an arbitrator because of a then-established narrow exception: where an assertion of arbitrability was "wholly groundless," a court was not required to submit the issue of arbitrability to an arbitrator. Determining defendants' arguments for arbitrability were wholly groundless, we affirmed the district court's holding that the claims were not arbitrable.

The Supreme Court reversed, holding that the "wholly groundless" exception was inconsistent with the Federal Arbitration Act.[2] The Court declined to opine on whether the contract in this case in fact delegated the threshold arbitrability question to an arbitrator, remanding for this court to make that determination in the first instance. It reminded that "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'"[3] Tasked with interpreting the arbitration clause anew, we conclude that the parties have not clearly and unmistakably delegated the question of arbitrability to an arbitrator. Accepting that the district court had the power to decide arbitrability, we now hold that the district court correctly determined that this case is not subject to the arbitration clause and affirm.

I.

The origins of this dispute are well-known; the complaint in this case was filed nearly seven years ago.[4] Plaintiff-Appellee Archer and White Sales, Inc. is a family-owned company that distributes, sells, and services dental equipment. It brought this antitrust suit against Defendant-Appellants Henry

---

[1] *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 878 F.3d 488 (2017), *rev'd*, 139 S. Ct. 524 (2019).

[2] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

[3] *Id.* at 531 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[4] *Id.* at 528–29; *Archer & White*, 878 F.3d at 491.

No. 16-41674

Schein, Inc., Danaher Corporation, and a number of subsidiaries who distribute and manufacture dental equipment. Archer claims that defendants entered into an anticompetitive agreement to restrict Archer's sales and to boycott Archer. Archer's complaint alleges violations of federal and Texas antitrust law and seeks money damages and injunctive relief.

The contract between Archer and Pelton and Crane, one of the defendant's predecessors-in-interest, (the "Dealer Agreement") contains an arbitration clause that is at the heart of this dispute. It provides:

> Disputes. This Agreement shall be governed by the laws of the State of North Carolina. Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association [(AAA)]. The place of arbitration shall be in Charlotte, North Carolina.

After the case was referred to a magistrate judge, defendants invoked the Federal Arbitration Act and moved to compel arbitration. Archer opposed that motion, arguing that its complaint sought injunctive relief and the arbitration clause explicitly excluded actions seeking such relief.

The magistrate judge granted the motion, determining that the arbitrability question should be left to an arbitrator because the Dealer Agreement incorporated the AAA rules and there was at least a "plausible construction" that would compel arbitration. Three years later, the district court vacated that order and held that the court could decide the threshold arbitrability question, reasoning that this action fell squarely within the arbitration clause's express exclusion of actions seeking injunctive relief.

3

No. 16-41674

We affirmed. Relying on an exception then operative in at least four circuits,[5] we concluded that defendants' argument for arbitration was wholly groundless. In our view, there was "no plausible argument that the arbitration clause" applied to an action seeking injunctive relief.[6] Applying our precedent in *Douglas v. Regions Bank*,[7] we determined that because the assertion of arbitrability was implausible, the threshold arbitrability question should be decided by the district court.[8] The Supreme Court reversed, eliminating that exception and abrogating *Douglas*. Relying on the text of the Federal Arbitration Act, the Supreme Court held that if a "contract delegates the arbitrability question to an arbitrator, a court may not override the contract."[9] The Court reaffirmed its holding in *First Options*, that "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."[10] Sending the case back to us, the Court instructed this court to determine whether clear and unmistakable evidence of the parties' delegation exists here.[11]

## II.

We review a ruling on a motion to compel arbitration *de novo*.[12] Our inquiry proceeds in two steps. The first is a matter of contract formation—"whether the parties entered into *any arbitration agreement at all*."[13] Next we turn to the question of contract interpretation and ask whether "*this* claim is

---

[5] *See Henry Schein*, 139 S. Ct. at 528–29 (collecting cases from the Fourth, Fifth, Sixth, and Federal Circuits applying the exception).

[6] *Archer*, 878 F.3d at 497.

[7] 757 F.3d 460 (2014).

[8] *Archer*, 878 F.3d at 497.

[9] *Henry Schein*, 139 S. Ct. at 529.

[10] *Id.* at 530 (quoting *First Options*, 514 U.S. at 944).

[11] While both parties read the tea leaves in the questions asked by the Justices at oral argument, attempting to shepherd them to support their own positions, the Court declined to decide whether this agreement in fact delegated the arbitrability question.

[12] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2012).

[13] *Id.*

No. 16-41674

covered by the arbitration agreement."[14] While ordinarily both steps are questions for the court,[15] the parties can enter into an arbitration agreement that delegates to the arbitrator the power to decide whether a particular claim is arbitrable.[16] The Supreme Court has repeatedly made clear that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[17]

When considering whether there was a valid delegation, "the court's analysis is limited."[18] As always, we ask if the parties entered into a valid agreement. If they did, we turn to the delegation clause and ask "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated."[19] When determining that intent, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so."[20] If there is a valid delegation, the court must grant the motion to compel.[21]

The parties agree that there is a valid arbitration clause. With respect to delegation, the parties' arguments on remand sing a familiar tune. Archer contends that there is no clear and unmistakable evidence that the parties delegated arbitrability disputes to an arbitrator. The way the agreement is

---

[14] *Id.*

[15] *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

[16] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

[17] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citing *Howsam*, 537 U.S. at 83–85).

[18] *Kubala*, 830 F.3d at 202.

[19] *Id.*

[20] *First Options*, 514 U.S. at 944 (internal citation and alterations omitted).

[21] *Kubala*, 830 F.3d at 202. Of course, *Kubala*'s statement that "the motion to compel arbitration should be granted in almost all cases"—where the argument for arbitration was not wholly groundless—should now be read without the "almost."

written, Archer asserts that the AAA rules (and resulting delegation) only apply to disputes that fall outside of the arbitration clause's carve-out for actions seeking injunctive relief. Under their reading, if a case falls within the carve-out, the agreement does not incorporate the AAA rules and the gateway arbitrability question is not delegated to an arbitrator. On the other hand, defendants argue that the agreement's incorporation of the AAA rules ends the inquiry. They maintain that the carve-out for actions seeking injunctive relief does not trump the parties' delegation. Defendants warn that to read the contract as Archer suggests would require the court to make a merits determination about the scope of the carve-out—whether this is indeed an action seeing injunctive relief—to answer the delegation question, precisely the category of inquiries a court is precluded from making in answering the delegation question.

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[22] A contract need not contain an express delegation clause to meet this standard. As we held in *Petrofac*, an arbitration agreement that incorporates the AAA Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."[23] Under AAA Rule 7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[24]

It is undisputed that the Dealer Agreement incorporates the AAA rules, delegating the threshold arbitrability inquiry to the arbitrator for at least some

---

[22] *AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986).

[23] *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

[24] AM. ARBITRATION ASS'N, COMMERCIAL ARBITRATION RULES AND MEDICATION PROCEDURES 13 (2013), https://www.adr.org/sites/default/files/Commercial%20Rules.pdf.

category of cases. The parties dispute the relationship of the carve-out clause—exempting actions seeking injunctive relief—and the incorporation of the AAA rules. The agreement states that "[a]ny dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of [the predecessor]), shall be resolved by binding arbitration *in accordance with the arbitration rules of the American Arbitration Association.*"

The agreement in *Petrofac* explicitly covered "all claims and disputes," containing no carve-out provision.[25] We have previously applied *Petrofac* to arbitration provisions that do contain carve-out provisions. In *Crawford*, we considered an arbitration agreement that incorporated the AAA Rules and also contained a carve-out that nothing in the arbitration provision "shall prevent either party from seeking injunctive relief for breach of th[e Agreement]."[26] Without specifically discussing the carve-out, we held that the *Crawford* agreement's incorporation of the AAA rules was "clear and unmistakable evidence that the parties to the [] Agreement agreed to arbitrate

---

[25] *Petrofac*, 687 F.3d at 674.

[26] *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 256 (5th Cir. 2014). In that case, the Provider Agreement read as follows:

> Any and all disputes in connection with or arising out of the Provider Agreement by the parties will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of Law, and may only award remedies provided for in the Provider Agreement . . . . Any such arbitration must be conducted in Scottsdale, Arizona, and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the award of the arbitrator is rendered . . . . Arbitration shall be the exclusive and final remedy for any dispute between the parties in connection with or arising out of the Provider Agreement; provided, however, that nothing in this provision shall prevent either party from seeking injunctive relief for breach of this Provider Agreement in any state or federal court of law . . . .

arbitrability."[27] Under the terms of that agreement, the gateway arbitrability question was delegated to the arbitrator. The Ninth Circuit considered a similar agreement in *Oracle Am., Inc. v. Myriad Group A.G.*[28] The arbitration clause adopted arbitration rules delegating arbitrability issues to the arbitrator and contained a carve-out for certain intellectual property and licensing claims. [29] Because the claims carved-out by that agreement "ar[ose] out of or relat[ed] to" the Source License, and the agreement explicitly provided that any claim arising out of the Source License was subject to arbitration, the Ninth Circuit held that Oracle's carve-out argument "conflate[ed] the *scope* of the arbitration clause . . . with the question of *who* decides arbitrability."[30]

The Second Circuit has also considered an arbitration clause that incorporated the AAA rules and exempted certain claims from arbitration.[31]

---

[27] *Id.* at 263.

[28] 724 F.3d 1069, 1072–75 (9th Cir. 2013).

[29] The agreement at issue stated, in relevant part:

Any dispute arising out of or relating to this License shall be finally settled by arbitration as set out herein, except that either party may bring any action, in a court of competent jurisdiction (which jurisdiction shall be exclusive), with respect to any dispute relating to such party's Intellectual Property Rights or with respect to Your compliance with the TCK license. Arbitration shall be administered: (i) by the American Arbitration Association (AAA), (ii) in accordance with the rules of the United Nations Commission on International Trade Law (UNCITRAL) (the "Rules") in effect at the time of arbitration as modified herein; and (iii) the arbitrator will apply the substantive laws of California and United States. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction to enforce such award.

*Id.* at 1071.

[30] *Oracle*, 724 F.3d at 1076. The clause in *Oracle* provided that "any claim arising out of the Source License shall be settled by arbitration" but exempted "any dispute relating to such party's Intellectual Property Rights or with respect to [Myriad's] compliance with the TCK license." *Id.* at 1075–76. The court noted that the issue with Oracle's carve-out argument was that the two categories of exempted claims by definition were claims arising out of or relating to the Source License, which were explicitly subject to arbitration. *Id.* at 1076. No such circularity exists in the contract at issue here.

[31] *NASDAQ OMX Grp., Inc. v. UBS Securities, LLC*, 770 F.3d 1010 (2d Cir. 2014). That agreement provided in relevant part:

The court noted that it had "found the 'clear and unmistakable' provision satisfied where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability."[32] However, the parties in *NASDAQ* had not clearly and unmistakably delegated arbitrability "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute."[33] Because there was ambiguity as to whether the parties intended to have arbitrability questions decided by an arbitrator—because the dispute arguably fell within the carve-out—the court held the arbitrability question was for the court to decide.[34]

Defendants urge that *Crawford* controls and the only difference between that arbitration agreement and the one here is syntax—the ordering of words. But that is precisely the point—the placement of the carve-out here is dispositive. We cannot re-write the words of the contract. The most natural reading of the arbitration clause at issue here states that any dispute, except actions seeking injunctive relief, shall be resolved in arbitration in accordance with the AAA rules. The plain language incorporates the AAA rules—and therefore delegates arbitrability—for all disputes *except* those under the carve-

---

A. Except as may be provided in the NASDAQ OMX Requirements, all claims, disputes, controversies, and other matters in question between the Parties to this Agreement and the Parties' employees, directors, agents and associated persons arising out of, or relating to this Agreement, or to the breach hereof, shall be settled by final binding arbitration in accordance with this Agreement and the following procedure or such other procedures as may be mutually agreed upon by the Parties. B. Except as otherwise provided herein or by agreement of the Parties, any arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association or in accordance with such other rules and procedures as are agreed to by the Parties.

*Id.* at 1016.

[32] *Id.* at 1031.

[33] *Id.*

[34] *Id.* at 1032.

No. 16-41674

out. Given that carve-out, we cannot say that the Dealer Agreement evinces a "clear and unmistakable" intent to delegate arbitrability.

We are mindful of the Court's reminder that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."[35] But we must also heed its warning that "courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'"[36] The parties could have unambiguously delegated this question, but they did not, and we are not empowered to re-write their agreement.

## III.

In addition to disputing whether an arbitrator must decide the gateway question of arbitrability, the parties disagree about whether the underlying dispute is arbitrable at all. Accepting that the district court had the power to decide arbitrability, we next examine whether it correctly determined that the instant action is not subject to the arbitration clause. We do so against the backdrop of a strong presumption in favor of arbitration,[37] yet we also remain mindful of the fact that the FAA "does not require parties to arbitrate when they have not agreed to do so, nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement."[38]

The magistrate judge found that while "[o]n the most superficial level, this lawsuit is clearly an action seeking injunctive relief since it *does* seek that

---

[35] *Henry Schein, Inc.*, 139 S. Ct. at 531.

[36] *Id.* (quoting *First Options*, 514 U.S. at 944).

[37] *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

[38] *Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal citations omitted).

relief," there was also "a plausible construction [of the Dealer Agreement] calling for arbitration." The magistrate judge read the contract to leave open "the question of whether the exception for actions seeking injunctive relief should be limited to actions for an injunction in aid of arbitration or to enforce an arbitrator's award."

The district court, on the other hand, found that the carve-out for "'actions seeking injunctive relief' is clear on its face—any action seeking injunctive relief is excluded from mandatory arbitration." Thus, the provision's plain language includes all actions seeking injunctive relief, not a more limited category of cases.[39] In so holding, the district court pointed out that the carve-out clause is not part of the AAA's suggested language, and that "[s]uch an intentional drafting effort . . . is worthy of the court's notice." The court declined to "re-write the terms of the Parties' agreement to accommodate a party— notably the party that drafted the agreement—that could have negotiated for more precise language," and held that the arguments for arbitrability were "wholly without merit based on the plain language of the arbitration clause itself."

Defendants urge that, where an arbitration clause contains a carve-out for injunctive relief and one party files a complaint seeking both injunctive relief and damages, the court should read the carve-out to permit injunctive relief only as a preliminary matter to preserve the status quo pending arbitration or on a permanent basis after the plaintiff secures an arbitration award in its favor. They suggest that the court must send the damages clause to arbitration, even if it results in piecemeal litigation. In their view, that

---

[39] The district court observed, "no textual basis exists for reading the phrase 'actions seeking injunctive relief' as 'actions seeking injunctive relief if such injunctions are in aid of arbitration.' Further, the clause does not limit the exclusion to actions seeking 'only' injunctive relief, and the Court also declines to read that limitation into the document."

reading of the clause preserves the parties' right to arbitrate the damages claims while preserving the court's role in any injunctive proceedings. They warn that Archer's interpretation allows a party to "tack on" a vague request for injunctive relief to evade arbitration.

Archer counters that the plain language of the clause makes clear that the parties did not agree to arbitrate *actions* that include a request for injunctive relief—therefore there is no plausible argument that the arbitration clause applies. Archer emphasizes that arbitration agreements are as enforceable as other contracts, but not more so, and the court cannot reach beyond the plain and unambiguous language in the agreement.

We note first that the arbitration clause creates a carve-out for "actions seeking injunctive relief." It does not limit the exclusion to "actions seeking *only* injunctive relief," nor "actions for injunction in aid of an arbitrator's award." Nor does it limit the carve-out to *claims* for injunctive relief. Such readings find no footing within the four corners of the contract. Under North Carolina law, "[w]hen the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of construction, cannot reject what the parties inserted or insert what the parties elected to omit."[40]  The mere fact that the arbitration clause permits Archer to avoid arbitration by adding a claim for injunctive relief does not change the clause's plain meaning. "While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, *or reach a result inconsistent with the plain text of the contract*, simply

---

[40] *Procar II, Inc. v. Dennis*, 721 S.E.2d 369, 371 (N.C. Ct. App. 2012) (quoting *Taylor v. Gibbs,* 268 N.C. 363, 365, (1966)).

because the policy favoring arbitration is implicated."[41] Fundamentally, defendants ask us to rewrite the unambiguous arbitration clause. We cannot.

Defendants urge that this reading would lead to absurd results, where one party could unilaterally evade the agreement to arbitrate with an attenuated request for injunctive relief. This argument overreaches. Even if we re-wrote the carve-out clause to apply only to actions seeking significant injunctive relief—which we cannot—this particular action would still fall within that exception. Archer's complaint alleges multiple continuing violations of federal and state antitrust laws.[42] As the district court correctly noted, the proper vehicle to argue Archer failed to state a claim for relief is a motion under Rule 12. We cannot address the underlying merits of Archer's claim at this stage. It is enough to note that the current action is indeed an "action seeking injunctive relief."

---

[41] *E.E.O.C. v. Waffle House*, 534 U.S. 279, 294 (2002) (emphasis added) (internal citations omitted).

[42] In their initial briefing to this court and in their supplemental brief on remand, defendants contend that Archer is no longer entitled to injunctive relief because, during the pendency of this litigation, their contractual relationship with Archer ended. In support of this proposition, defendants cite cases where this court has held that plaintiffs are no longer entitled to injunctive relief. In *Hendricks*, the court held that enjoining a plaintiff's former employer from future ERISA violations was not appropriate. *Hendricks v. UBS Fin. Servs., Inc.*, 546 F. App'x 514, 520 (5th Cir. 2013) (per curiam). In *Glanville*, a district court found the plaintiffs had no standing to pursue a claim for declaratory and injunctive relief based on their purported misclassification as independent contractors because they no longer had any employment relationship with the defendants and thus could not allege future harm. *Glanville v. Dupar, Inc.*, 727 F.Supp.2d 596, 602 (S.D. Tex. 2010). In its initial brief, Archer responded that these cases are inapposite because they do not involve antitrust violations. Archer notes that other circuits have upheld injunctive relief in private antitrust actions even where the specific conspiracy alleged has ended. *See Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 378 (7th Cir. 1990) (affirming the grant of an injunction aimed at remedying lasting effects of an illegal boycott). We need not decide this question here, as the arbitrability question turns only on whether the existing action as a whole constitutes an "action seeking injunctive relief."

No. 16-41674

IV.

Because this action is not subject to mandatory arbitration, we do not reach Archer's alternative argument that third parties to the arbitration clause cannot enforce such an arbitration clause. We affirm the district court's order denying defendants' motions to compel arbitration.