# Supreme Court of Texas

No. 21-0028

TotalEnergies E&P USA, Inc.,

*Petitioner*,

v.

MP Gulf of Mexico, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Twelfth District of Texas

JUSTICE BUSBY, dissenting.

Contracting parties beware: According to the Supreme Court of Texas, if you agree to arbitrate a limited set of disputes under the Rules of the American Arbitration Association (AAA), you are stripping courts of power to decide whether a particular dispute falls outside the scope of that agreement. And you are agreeing in advance to whatever the AAA may choose to say in the future about the arbitrators' power to decide that issue.

No matter how clearly you attempt to restrict both what types of disputes will be arbitrated and when the AAA rules apply, courts will force you to arbitrate under the AAA rules without even considering

those restrictions. Like glitter, the AAA rules cannot be constrained if the parties use them to any extent. Even if you say in a single sentence that certain scope requirements are substantive preconditions to arbitration, which shall be conducted under the AAA rules, an arbitrator will decide under the AAA rules whether your dispute meets those express preconditions. Because this surprising rule—which has evenly split courts nationwide—turns on its head the U.S. Supreme Court's admonition that any contractual delegation of power to arbitrators to decide such "arbitrability" questions must be "clear and unmistakable," I respectfully dissent.

Whether a party has given up the "right to a court's decision about the merits of its dispute" in favor of private arbitration is a "matter of contract": "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942-43, 945 (1995). Because arbitrators "derive their authority to resolve disputes" from the parties' advance agreement, it is ordinarily for courts—not arbitrators—to decide whether a particular dispute falls within the scope of the parties' agreement empowering the arbitrators. *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986); *see also BG Grp. PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). Any agreement to assign the decision of this so-called "arbitrability" question to the arbitrators themselves must be "clear and unmistakable" to avoid "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge . . . would decide." *First Options*, 514 U.S. at 944-45; *see*

2

*id.* (noting a party "might not focus upon . . . the significance of having arbitrators decide the scope of their own powers").

When applying this legal framework to a particular contract, the words chosen by the parties should be the beginning and end of the inquiry. Unlike the Court, I begin by analyzing that article.

## I.

Article 16.16 of the parties' System Operating Agreement adopts a "Dispute Resolution Procedure." It begins by providing that

> [a]ny dispute between the Parties concerning this Agreement (other than Claims by a third party under which a Party hereto is claiming indemnity, and such third party claim is in litigation) shall be resolved under the mediation and binding arbitration procedures of this Article 16.16.

Thus, the parties begin by carving out certain disputes from the scope of their procedure, which has both mediation and arbitration components. As explained below, the arbitration component of the procedure further limits its own scope.

Article 16.16 goes on to say that the parties "will first attempt in good faith to resolve all disputes" through management-level negotiations. "If any party believes further negotiations are futile, such Party may initiate the mediation process by so notifying the other Parties to the dispute . . . in writing." Those parties "shall then attempt in good faith to resolve the dispute by mediation" under the AAA's "Commercial Rules." "If the dispute has not been resolved pursuant to mediation within sixty (60) days after initiating the mediation process,

3

the dispute shall be resolved through binding arbitration, as follows: . . . ."

What follows is article 16.16.1, which is—or should be—at the heart of this case. That article provides:

> ***If*** any dispute or controversy arises between the parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof, ***and*** the Parties are unable to agree with respect to the matter or matters in dispute or controversy, the same ***shall be submitted to arbitration*** . . . in accordance with the ***rules of the AAA and the provisions in this Article 16.16***. (emphases added)

Viewed as a whole, the parties' chosen words create a substantive condition that narrows the agreement to arbitrate—similar to what the Court calls a "limited arbitrability" clause: "If" certain conditions are met, including that the parties' dispute falls within the agreed scope, then that dispute "shall be submitted to arbitration" under the AAA Rules and the provisions of the Agreement. In turn, AAA Commercial Rule 7(a) provided at the relevant time that an arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AM. ARB. ASS'N, *Commercial Arbitration Rules and Mediation Procedures* 13 (2013).

The question before us is whether this language as a whole clearly and unmistakably provides that an arbitrator, not a court, will decide whether the conditional "if" clause has been satisfied—in other words, decide whether the dispute "arises . . . out of this Agreement" and otherwise meets the agreement's specified conditions. The answer is no

4

because as a matter of text and logic, the "if" clause is a substantive condition precedent to arbitrators acquiring the power to decide anything at all. It is only "if" the specified conditions are met (antecedent) that the parties have agreed to allow arbitrators to decide their dispute (consequent), including any issues that may then arise regarding the arbitrators' jurisdiction and any questions the parties may choose to submit to the arbitrators regarding the scope of the agreement.

Respondent MP Gulf urges us to overlook this structure and compel arbitration without deciding ourselves whether the "if" clause has been satisfied. But in doing so, MP Gulf commits the logical error of using the consequent to determine the antecedent—that is, it puts the cart before the horse.

Any other reading makes this agreement a self-contradictory muddle. As just discussed, the agreement's plain text provides that a dispute shall be submitted to arbitration in accordance with the AAA rules only "if" that dispute is within the agreed scope. But if the Court is correct about what AAA Rule 7(a) means (which it is not as I explain in Part II.B.), then the agreement also says by incorporation that the arbitrators have the exclusive power to determine if a dispute is within the agreed scope. That reading of the rule is obviously inconsistent with the agreement's directive that a disagreement about arbitrability needs to be resolved in favor of the parties' dispute falling within the scope of the agreement to arbitrate before that dispute will even be submitted to arbitrators under the AAA rules. These conflicting signals about "who decides what" fail to satisfy the *First Options* test of clearly and

5

unmistakably assigning questions of arbitrability to the arbitrator for decision.

The Court relegates to a footnote its thoughts about this central contract-interpretation question: did the parties agree to substitute arbitrators for courts as the decisionmakers regarding whether the "if" clause of this particular agreement has been satisfied? *See ante* at 42 n.30. In addition, the Court does not examine how other decisions have analyzed the effect of similar conditional language. Rather, its footnote speculates that certain decisions would have come out the same way if the carve-out agreements in those cases had been written more like the expressly conditional agreement here. *See id.*

I disagree because the interpretive question as framed by the U.S. Supreme Court is whether the language chosen by the parties shows that they "clearly and unmistakably" intended to delegate arbitrability questions to the arbitrator. *AT&T Techs.*, 475 U.S. at 649; *see also First Options*, 514 U.S. at 944. And their choice here to use expressly conditional language ("If XYZ, then arbitrate under the AAA rules") rather than a limitation ("Arbitrate XYZ under the AAA rules") or a carve-out ("Arbitrate all disputes except ABC under the AAA rules") is an even clearer method of signaling that the parties did not intend to empower an arbitrator to decide under the AAA rules whether the conditions—XYZ—have been satisfied.

## II.

Rather than focusing on the contract, the Court poses and answers a different set of questions informed by extensive taxonomies of cases that bear little relationship to the wording and structure of this

particular agreement. Not only is exploring those questions unnecessary to our decision, it obscures that courts nationwide are actually quite closely divided on the very issue presented here: does an agreement to arbitrate fewer than "all" disputes under the AAA rules make arbitrators the sole decisionmakers regarding whether a particular dispute must be arbitrated? Moreover, the Court's proposed answers conflict with decisions of the U.S. Supreme Court and our own federal circuit as explained below, and they knee-cap our Court's recent precedent along the way.[1]

Specifically, the Court begins by advising that an agreement to arbitrate "any and all disputes" in accordance with the AAA rules would establish a clear and unmistakable agreement to delegate arbitrability decisions to the arbitrator, and it explores how reams of cases bear on that conclusion. The Court's conclusion is an interesting one, and it is significant given its impact on our other cases as just noted. I address one key aspect of this advisory conclusion in Part II.B. below: whether AAA Rule 7(a) is in fact an exclusive delegation of power to arbitrators to determine arbitrability.

But assuming its correctness for the moment, the Court's conclusion is also an unnecessary one that does not apply here because this particular agreement is not to arbitrate "any and all disputes."

---

[1] *See ante* at 13 n.11 (recognizing the tension between its holding and our recent decision in *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018), that incorporation of the AAA rules does not delegate to the arbitrator questions regarding the arbitrability of claims involving a non-signatory), 22 n.16 (limiting our recent decision in *Robinson v. Home Owners Management Enterprises, Inc.*, 590 S.W.3d 518, 531 (Tex. 2019), regarding arbitration of class-wide claims).

7

Rather, the agreement contains both (in the Court's terminology) a "carve-out" clause from the overall dispute-resolution procedure in Article 16.16 as well as a substantive precondition similar to a "limited arbitrability" clause in Article 16.16.1. I consider what other courts have said about the effect of such clauses next.

### A.

The Court holds that its interpretation of Rule 7(a) as an exclusive delegation of power to arbitrators to determine arbitrability does not change when the scope of the arbitration clause chosen by the parties is narrower than "any and all possible disputes." *Ante* at 31-32. This holding is incorrect and creates a split between our jurisprudence and that of the Fifth Circuit.

As the Court acknowledges earlier in its opinion (at 15), the Fifth Circuit held in *Henry Schein* (following a remand from the U.S. Supreme Court) that an agreement to AAA arbitration for some types of claims but not others "incorporates the AAA rules—and therefore delegates arbitrability [to the arbitrator]—for all disputes *except* those under the carve-out." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 281 (5th Cir. 2019). Thus, the court had the power to determine whether the carve-out applied. *Id.* at 282.

The Second Circuit agrees and has explained the logic and contours of this position. "Where . . . the arbitration agreement is narrower, vague, or contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes, incorporation of rules that empower an arbitrator to decide issues of arbitrability, standing alone, does not suffice to establish the requisite

8

clear and unmistakable inference of intent to arbitrate arbitrability." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 319 (2d Cir. 2021). As the court observed, "whether the AAA rules, including Rule 7(a), apply turns on the conditional premise that the dispute falls within the [scope of the agreement]. If it does not, then the AAA rules do not govern and no delegation of authority to the arbitrator to resolve questions of arbitrability arises." *Id.* at 321. The Delaware and Mississippi Supreme Courts also agree, as do many of our Texas appellate courts.[2]

I would join the Second and Fifth Circuits and the Delaware and Mississippi Supreme Courts in holding that a limited agreement to arbitrate under the AAA rules does not alone empower arbitrators to decide whether the dispute falls within the agreed limits.[3] The Court rejects this position, agreeing instead with the Sixth, Ninth, and Eleventh Circuits and the Kentucky Supreme Court that when the parties agree to a carve-out arbitration clause and select the AAA rules (e.g., "Arbitrate all disputes except ABC under the AAA rules"), they

---

[2] *See James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 80-81 (Del. 2006) ("Since this arbitration clause does not generally refer all controversies to arbitration, the federal majority rule does not apply, and something other than the incorporation of the AAA rules would be needed to establish that the parties intended to submit arbitrability questions to an arbitrator. There being no such clear and unmistakable evidence of intent, the trial court properly undertook the determination of substantive arbitrability."); *Nethery v. CapitalSouth Partners Fund II, L.P.*, 257 So. 3d 270, 274-75 (Miss. 2018); *see also ante* at 23 nn.19-20 (collecting cases from the Texas courts of appeals).

[3] *Cf. Jody James Farms*, 547 S.W.3d at 633 ("The insurance policy directly *incorporates the AAA rules only for these disputes*, not for disputes between Jody James and unspecified third parties." (emphasis added)).

9

delegate to the arbitrator the question whether the dispute falls within the carve-out. *Ante* at 35-40.

But all of those cases are distinguishable because they involved a different kind of agreement: an arbitration clause with a carve-out. Their reasoning does not apply to an arbitration clause with express preconditions to arbitration under the AAA rules like the one we have here. For example, the Court explains that in a carve-out case, "the parties [have] agreed (by incorporating the AAA rules) that all disputes over arbitrability would be resolved by the arbitrators, and 'the effect of the carve-out provision is to state that if an arbitrator determines that [a party has asserted a carved-out claim], then the arbitrator must refer that claim to a court if [the party] desires." *Ante* at 37 (quoting *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 758 (Ky. 2019)).

In this case, however, the parties have *not* agreed that "all" disputes over arbitrability will be resolved by arbitrators. Thus, unlike in those cases, there is no conflation of "the two separate and distinct questions of (1) who decides what claims are arbitrable with (2) what claims are arbitrable." *Ally Align Health*, 574 S.W.3d at 758. The parties here agreed that if certain express preconditions are met, including that the claim falls within a specified scope of what claims are arbitrable, the arbitrators are then empowered to decide that claim under the AAA rules "and the provisions in this Article." Under the Article, that power to decide—including the power to decide what claims are arbitrable—only belongs to arbitrators "if" the substantive preconditions are met. The parties did not clearly and unmistakably

10

delegate to arbitrators the power to decide whether the preconditions are met.

As a matter of black-letter contract law, "[w]hen an arbitration agreement incorporates by reference outside rules, the specific provisions in the arbitration agreement take precedence and the arbitration rules are incorporated only to the extent that they do not conflict with the express provisions of the arbitration agreement." *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 24 (Tex. 2014) (quotation marks omitted). Applying this principle does not "render the AAA's jurisdictional rule [7(a)] superfluous," *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 847 (6th Cir. 2020), as the Sixth Circuit and its aligned courts have concluded. Instead, it recognizes that the agreement's substantive preconditions on use of the AAA rules should take precedence over the application of particular rules. In cases where the preconditions are met, the arbitrators are empowered to use Rule 7(a) to decide any questions of jurisdiction that the parties may raise during the arbitration.

The Court also contends that the U.S. Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), requires courts to distinguish between the scope of an agreement to arbitrate and a separate provision of the same contract that delegates the arbitrability question to arbitrators. *See ante* at 41-42. But it is far from apparent that an average contracting party would understand that sort of multi-layered severability distinction—which the Court tries to illustrate by citing an article's abstruse analogy to a hole in a doughnut hole, *ante* at 45 n.31—with the clarity and unmistakability *First Options* requires.

11

Moreover, an examination of *Rent-A-Center* reveals that it was addressing a far different contract and arbitration challenge than the one at issue here and in *Henry Schein*. The parties in *Rent-A-Center* entered into a stand-alone agreement to arbitrate employment disputes. One provision in the agreement provided for arbitration of all disputes arising out of the plaintiff's employment, while a separate provision provided that the arbitrator—and not any court—had exclusive authority to resolve any dispute relating to the applicability or enforceability of the agreement. 561 U.S. at 65. The agreement did not reference the AAA rules.

The plaintiff employee sued for employment discrimination and Rent-A-Center moved to compel arbitration. The employee argued that a court should determine whether enforcing the arbitration agreement would be unconscionable, but the Supreme Court disagreed. It observed there was no dispute that the delegation provision clearly and unmistakably provided the arbitrator with exclusive authority to decide whether the agreement was enforceable. *See id.* at 69 n.1. Nor was there any disagreement that the employee's discrimination suit as well as his claim that the agreement was unconscionable were within the scope of the agreement's broad promise to arbitrate all disputes arising out of his employment.

Instead, the only question in dispute was whether the plaintiff's claim of unconscionability challenged the validity of the contract as a whole or of the delegation provision specifically. *Id.* at 70-72. The Supreme Court concluded that the plaintiff was challenging the unconscionability of the contract and of particular procedural provisions

regarding fee-splitting and discovery limits in arbitration. *Id.* at 72-75. It therefore treated the separate delegation and scope-of-arbitration provision as valid and enforced it, leaving the validity challenges for the arbitrator to decide. *Id.* at 72.

The routine severability analysis in *Rent-A-Center* does not shed any light on the proper decision in this case, which involves no validity challenges to all or any part of the agreement. Here, the agreement includes a single combined sentence that addresses the scope of the agreement to arbitrate, incorporates the AAA rules including Rule 7(a) regarding the arbitrator's power to decide arbitrability, and uses expressly conditional language (absent in *Rent-A-Center*) to describe the relationship between the two. Although I agree with my colleagues in the majority that the scope of the arbitrator's authority to decide questions of arbitrability can be a distinct inquiry from the scope of the agreement to arbitrate, the results of those separate analyses should nonetheless be identical when the phrase that incorporates the AAA rules is grammatically subject to the same textual limitations the parties expressed regarding their agreement to arbitrate.

To the extent that reconciling the two analyses "might seem like a chicken-and-egg problem," that tension "is resolved by application of the presumption favoring a judicial determination." *Jody James Farms*, 547 S.W.3d at 633. "After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes . . . , but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms." *First Options*, 514 U.S. at 947 (quotation marks omitted).

13

Finally, unlike in *Rent-A-Center*, the parties here disagree about (1) whether their dispute falls within the scope of the promise to arbitrate, (2) whether the AAA rules come into play in deciding that scope issue given the conditional structure of the combined sentence, and (3) even if the AAA rules apply, whether the Rule 7(a) arbitrability provision—which (unlike the *Rent-A-Center* agreement) does not reference an exclusive delegation to the arbitrator—prevents courts from deciding the scope issue.

In summary, I conclude regarding the second issue that an affirmative answer to the first (scope) issue is a condition precedent to the application of the AAA rules under the particular language of this agreement, so that answer must be given by a court. As explained in Part II.B. below, I also conclude regarding the third issue that even if the AAA rules apply, Rule 7(a)'s delegation language is not exclusive and thus does not deprive courts of the power to address the scope issue. For either of those independent reasons (or both together), I would hold that the court of appeals erred by failing to address the first issue regarding scope before compelling arbitration, and I would reverse and remand for it to do so.

## B.

The Court's holding that the AAA rules clearly and unmistakably delegate arbitrability decisions to arbitrators in place of courts is founded on its interpretation of Rule 7(a). It characterizes Rule 7(a)'s statement that the arbitrator "shall have the power to rule on" the arbitrability of a claim as "mandatory and exclusive language" that "clearly and unmistakably delegate[s] that decision exclusively to the

14

arbitrator," thereby depriving courts of the power to address it. *Ante* at 28-29. That view is flatly contrary to federal law and U.S. Supreme Court precedent.

As *First Options* explains, an arbitration clause can grant arbitrators at most "*primary* authority to decide whether a party has agreed to arbitrate." 514 U.S. at 942 (emphasis added). Under the Federal Arbitration Act, courts still retain the ability to vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).[4] Thus, as a matter of law, Rule 7(a) cannot mean what the Court says; the authority that the rule gives arbitrators to decide the scope of their own powers does not exclude courts from policing the limits on those powers drawn by the arbitration agreement's unambiguous language.

In addition, the AAA itself acknowledged Rule 7(a)'s non-exclusive nature in its September 2022 amendment. The rule now provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, *without any need to refer such matters first to a court*" (emphasis added). AM. ARB. ASS'N, *Commercial Arbitration*

---

[4] By way of illustration, *Jody James Farms* involved an appeal of the trial court's final judgment denying Jody James's motion to vacate an arbitration award and confirming the arbitration award against Jody James. 547 S.W.3d at 630. In reviewing that determination, this Court did not approach the inquiry through the lens of whether the arbitrator had exceeded its powers under section 10(a)(4), instead identifying the relevant question as "whether a binding arbitration agreement exist[ed]" in the first place. *Id.* at 633.

*Rules and Mediation Procedures* 14 (2022). Although the amendment is not applicable here, it confirms that the function of Rule 7(a) is to give arbitrators non-exclusive power to address any arbitrability issues that may arise during an arbitration, while not disturbing the court's role as an available decisionmaker for arbitrability issues that may come before it in a motion to compel. By indicating that arbitrability matters can be—but need not be—referred to a court, the AAA shows its understanding that both courts and arbitrators have the power to decide arbitrability issues under its rules.

The Court does not engage with this new language. But the Court's reasoning depends on arbitrators having *exclusive* power to decide arbitrability, which suggests that its decision today will not apply to arbitrations governed by the new rule.

The 2022 amendment recognizing that both courts and arbitrators have a role to play in deciding arbitrability questions also shows why the Florida Supreme Court's recent decision on this issue is wrong. According to that court, "[t]he question of whether a claim is arbitrable must, by necessity, be determined *before* the commencement of arbitration"; thus, recognizing courts' continued power to decide questions of arbitrability when the parties have incorporated the AAA rules would render Rule 7(a) meaningless. *Airbnb, Inc. v. Doe*, 336 So. 3d 698, 705 (Fla. 2022) (emphasis added). Not so.

Whether parties commence an arbitration by agreement or as a result of a court's ruling on a motion to compel, arbitrators can and frequently do decide issues regarding their jurisdiction—including the arbitrability of a claim as permitted by Rule 7(a)—that arise in that

arbitration proceeding. That role is the very one contemplated by the amended rule as well as the cases on which the Court relies. *See, e.g.*, *Ally Align Health*, 574 S.W.3d at 758 ("[I]f an arbitrator determines that [a party has asserted a carved-out claim], then the arbitrator must refer that claim to a court if [the party] desires.").

On the other hand, arbitrability disputes must necessarily be resolved by a court in some cases, and practical difficulties are sure to flow from the Court's holding that the AAA rules oust courts from this role entirely. For example, in addition to filing this suit for declaratory judgment, Total also filed an arbitration claim with the International Institute for Conflict Prevention and Resolution (IICPR) as required by the parties' separate Cost Sharing Agreement. Under the Court's decision today, if Total had moved to compel arbitration of its IICPR claim—as MP Gulf did with respect to its AAA claim under the System Operating Agreement—the trial court would likewise be bound to refer any questions concerning the arbitrability of *that* claim to the arbitrators in the IICPR proceeding. And while each organization's rules may provide authority for its arbitrators to determine their *own* jurisdiction, it is not clear how such a finding would bind the trial court with respect to *other* pending proceedings (before a separate organization under a separate agreement) without begging the very same question the Court confronts at the outset: whether courts retain any authority to determine de novo the scope of either agreement's incorporation of arbitral rules.

Finally, the approach the Court follows in parsing Rule 7(a)'s phrase "shall have the power" is linguistically flawed. The word "shall"

17

in grants of jurisdiction does not signal exclusivity. For example, although federal district courts "shall have original jurisdiction of all civil actions arising under" federal law, 28 U.S.C. § 1331, that grant does not oust state courts of concurrent jurisdiction. *See Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990). And the definite article "the" is "used to designate a particular person or thing, or a particular class of persons or things."[5] Although it can be a word of limitation, as the Court explains, that does not mean it is a word of exclusion—particularly when the thing specified is capable of being shared with other people or things not mentioned in the sentence. In particular, any limitation indicated by using "the" in referring to a thing that is the object of a sentence would naturally apply to that sentence's subject, not to another noun not mentioned.[6] So at most, Rule 7(a)'s statement that the arbitrator "shall have the power to" do certain things introduces a specified (or perhaps limited) list of powers possessed by the sentence's subject: the arbitrator. It suggests nothing about whether other unmentioned people—such as judges—shall also have some of those powers.

Because Rule 7(a)—both before and after its amendment—does not clearly and unmistakably vest decisionmaking power over arbitrability in arbitrators alone, it does not deprive Texas courts of their ability to resolve the parties' disagreement regarding whether their dispute falls within the scope of the arbitration clause.

---

[5] Webster's New International Dictionary 688 (2d ed. 1934).

[6] For example, if I said "he shall wash the red car," that statement designates what he will wash and may be limiting if cars of other colors are also waiting to be washed. But the statement does not exclude an unmentioned third party from also washing the red car.

Accordingly, I would hold that the court of appeals erred in failing to reach that issue and reverse and remand for it to do so.

## C.

I conclude with a brief response to the concurring opinion, which suggests that we need not resolve whether a trial court or an arbitrator is the correct entity to decide whether this dispute falls within the scope of the Cost Sharing Agreement's arbitration clause. Instead, we can decide that question ourselves whenever the clause unequivocally applies to the dispute and that answer is consistent with a judgment below compelling arbitration. *Ante* at 8-10 (Bland, J., concurring). I agree with the Court (*ante* at 49 n.34), however, that this reasoning does not provide an alternative ground for affirmance.

The Court and this dissent start with the question of who decides arbitrability for an important reason: if the parties' agreement provides that the arbitrability issue is for the arbitrator to decide (as the Court holds), we should not issue an advisory opinion telling the arbitrator how to do the job that the parties deliberately assigned to him or her. The concurrence's certainty that the arbitrator would inevitably determine that the arbitration agreement applies anyway is the mirror image of the practice the U.S. Supreme Court rejected in *Henry Schein*, in which some courts "short-circuit[ed] the process and decide[d] the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute [was] 'wholly groundless.'" 139 S. Ct. 524, 527-28 (2019). As the Supreme Court explained, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator,

. . . a court possesses no power to decide the arbitrability issue." *Id.* at 529.

Second, in my view, the arbitrability issue is even more complex than the concurrence suggests. As the Court notes, Total's request for a declaratory judgment construing the Cost Sharing Agreement potentially implicates three agreements: not only the Cost Sharing Agreement itself (which has a forum selection clause choosing litigation in Harris County) but also the System Operating Agreement (which MP Gulf argues requires AAA arbitration) and the Chinook Operating Agreement (which Total argues requires IICPR arbitration). *Ante* at 2-3. The concurrence addresses part of this tangled web, concluding that the System Operating Agreement's arbitration clause trumps the Cost Sharing Agreement and encompasses this dispute.

As the Court points out, the parties' arguments on this issue are extensive and detailed. *Ante* at 46 & n.32. I express no view on whether the concurrence's analysis is correct as far as it goes, as we have no power to do so under the Court's holding that the arbitrability question is for the arbitrators to resolve. But I believe it is important to note for completeness that other arguments not addressed by the Court or the concurrence will presumably be before the arbitrators as well, including Total's arguments that this cost-sharing dispute is more closely related to the Cost Sharing Agreement and the Chinook Operating Agreement and that its Harris County suit and IICPR arbitration were filed first and involve logically antecedent issues so they should proceed first under principles of dominant jurisdiction. Because I would hold that

these arguments should be addressed by courts rather than arbitrators, I respectfully dissent.

J. Brett Busby
Justice

**OPINION FILED:** April 14, 2023